VERNON GUNTER V. THE STATE.

No. 17971.   Delivered February 26, 1936.
Appeal Reinstated April 1, 1936.
Rehearing Denied June 3, 1936.

The opinion states the case.

*Sid Crumpton,* of Fort Stockton, and *L. C. Boswell,* of Texarkana, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

The recognizance appearing in the record is defective in that it fails to state the names of the sureties. Luman v. State, 20 S. W. (2d) 1064.

The appeal is dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—It being made to appear, in connection with appellant's motion, that a proper recognizance was entered into by him, the judgment of dismissal is set aside, and the case will now be considered on its merits.

We find in the record five bills of exception, the first of which complains of the refusal of a peremptory instruction of acquittal. This was not error. The second bill complains of the refusal of a special charge seeking to have the jury told to acquit if they found from the evidence, or had a reasonable doubt thereof, that appellant's codefendant Jimmie Harris bought the animal in question. The record shows that Mr. McClurg's six months old calf disappeared on January 31, 1935. The next morning the calf's mother when turned out of the lot went off bawling. McClurg followed her up toward Murphy's house to a place where a lot of blood was found on the leaves and ground; about twenty steps from Big Creek. Signs showed where something had been dragged. Search disclosed the entrails of the calf in the creek as well as the head and part of the legs. The tracks of two men were observed at the place leading up to Murphy's house. A search warrant was secured, and in Murphy's house the beef from the calf was found. Appellant and Harris had been staying at Murphy's house, Mrs. Murphy being a sister of appellant,—for some time. The record makes plain the fact that appellant and Harris killed the calf, and threw its head, entrails and legs in the creek. The hide could not be found. The evidence also satis-

factorily showed that both appellant and Harris were at the Murphy house at or about the time that the search was made and the meat found. Harris was working on a car out in front of the house and was arrested and was asked regarding appellant. Harris said appellant was there; that he would go call him. He went into the house and called, and then out at the back door and called, and then kept going toward the woods and made his escape. On the trial appellant took the stand and testified that he and Harris went down into the woods that morning, and saw a man about thirty-five years old on foot driving fifteen or twenty head of cattle out of the bottom, which was covered with high water. That a small calf,—which appellant later testified weighed about thirty or forty pounds, and which seemed unable to keep up with the others,—was noticed by appellant, who called Harris' attention to it, and appellant asked the man driving the cattle how much he would take for this calf, and the man told him he would take a dollar. Harris felt in his pockets and said he only had eighty-five cents, and the man said he would take that. Appellant said they carried the calf across the creek and killed it and cut it in two and each of them brought half of it up to Murphy's house where they skinned it and hung the meat up. Appellant described the man whom he claimed was driving the cattle; said he had on rubber boots, and was driving the animals on foot. Questioned as to whether he made any effort to find such a man, apparently the owner of a lot of cattle, and produce him as a witness on this trial, appellant admitted he had made no effort so to do. He admitted that he had not given his father or brothers-in-law any description of this man, and had asked for no process, and had not tried to find him.

The court charged the jury that they should acquit if they believed, or had a reasonable doubt of the fact that appellant's codefendant bought said calf without knowledge of the fact that it did not belong to the man from whom he bought it. There was no exception to this charge of the court as given. Appellant, however, asked a special charge to the effect that the jury be told that if appellant's codefendant Harris bought the calf they should acquit. While there is a difference between the instruction of the court to the jury and the special charge asked, under the facts of this case and the provisions of Art. 666, C. C. P., we are unable to bring ourselves to believe that appellant suffered any injury from the refusal of said special charge, complaint of which refusal appears in his bill of exceptions No. 2. The testimony shows without question that

both appellant and Harris fled from the house of Murphy when the searching party came, and that they went twelve or fifteen miles that night to appellant's sister's home in Texarkana, and were later arrested. Under the facts, if Harris did buy the calf, as appellant testified, he clearly bought it from a man without knowledge of the fact that it did not belong to this man, and no harm could have resulted from the difference between the charge asked and that given.

Appellant's third bill of exceptions complains of the reception of evidence of the escape of Jimmie Harris from the officers and his flight from the home of the Murphys. The testimony of the Murphys shows that appellant was at their house and seen by them just a few minutes before the officers arrived; also that Harris told the officers that appellant was there. Clearly both appellant and Harris made their escape and fled at or about the same time. We find nothing in the authorities cited by appellant in his brief that apply to a case like this. Jump v. State, 27 Texas Crim. App., 459, cited, was a case where one charged jointly with the accused in a murder case, was shown to have been arrested after the homicide at a point four hundred miles from the scene of the murder. Bills of exception 4 and 5 are substantially the same as bill No. 3, and we think are without merit.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

MORROW, P. J., absent.

### ON SECOND MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—We have re-examined the record in the light of the motion for rehearing and have reached the conclusion that in the original opinion all matters of evidence which required discussion were given attention. The opinion is expressed that a further discussion of the record would be but a repetition of the conclusions stated on the original hearing.

The motion for rehearing is overruled.

*Overruled.*